Slip Op. 09-32

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

SKF USA INC., SKF FRANCE S.A., SKF AEROSPACE FRANCE S.A.S., SKF GmbH, and SKF INDUSTRIE S.p.A.,

        Plaintiffs,

   v.

UNITED STATES,

        Defendant,

  and

THE TIMKEN COMPANY,

        Defendant-Intervenor.

</td><td>

Before: Timothy C. Stanceu, Judge

Court No. 06-00270

</td></tr>
</table>

## OPINION

[Affirming final results of an administrative review of an antidumping duty order on ball bearings and parts thereof from France, Germany, Italy, Japan, and the United Kingdom and declaring unlawful the policy of the United States Department of Commerce to issue liquidation instructions within fifteen days of publication of final results of administrative reviews.]

Dated: April 17, 2009

*Steptoe & Johnson LLP* (*Herbert C. Shelley*, *Alice A. Kipel*, and *Susan R. Gihring*) for plaintiffs.

*Michael F. Hertz*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Mykhaylo Gryzlov*, *Jennifer I. Johnson*, and *Sapna Sharma*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Stewart and Stewart* (*Geert M. De Prest*, *Terence P. Stewart*, *William A. Fennell*, and *Lane S. Hurewitz*) for defendant-intervenor.

Stanceu, Judge: Plaintiffs SKF USA Inc., SKF France S.A., SKF Aerospace France S.A.S., SKF GmbH, and SKF Industrie S.p.A. (collectively, "plaintiffs" or "SKF") contest the final results ("Final Results") that the United States Department of Commerce ("Commerce" or the "Department") issued in an administrative review of an antidumping duty order on ball bearings and parts thereof from France, Germany, Italy, Japan, and the United Kingdom. Plaintiffs contend that Commerce, pursuant to a practice known as "zeroing," unlawfully assigned them a weighted-average dumping margin that deemed the sales that plaintiffs made in the United States at prices above normal value to have individual dumping margins of "zero" rather than negative margins. Plaintiffs move under USCIT Rule 56.2 for judgment upon the agency record, requesting that the court remand the final results to Commerce with the directive to redetermine plaintiffs' weighted-average dumping margin without the use of zeroing. In addition, plaintiffs challenge the Department's policy of issuing liquidation instructions to United States Customs and Border Protection ("Customs" or "CBP") within fifteen days of the publication of the final results of an administrative review ("fifteen-day policy"), arguing that the antidumping statute requires Commerce to wait at least sixty days before issuing such instructions.

The court affirms the Final Results in the use of the zeroing methodology. The court rejects plaintiffs' argument that the antidumping statute requires Commerce to wait at least sixty days before issuing liquidation instructions to Customs to implement the results of an administrative review, but the court nevertheless concludes that the fifteen-day policy is unlawful on an alternate ground.

## I. BACKGROUND

Commerce issued the Final Results pursuant to 19 U.S.C. § 1675(a) (2000) in the Department's administrative reviews of antidumping duty orders on ball bearings and parts thereof from France, Germany, Italy, Japan, and the United Kingdom for the period May 1, 2004 through April 30, 2005. *See Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom: Final Results of Antidumping Duty Admin. Reviews*, 71 Fed. Reg. 40,064, 40,064 (July 14, 2006) ("*Final Results*"). Plaintiffs initially advanced three claims, including a claim challenging the "model-matching" methodology that Commerce applied in determining normal value. Compl. ¶¶ 4-15; Am. Compl. ¶¶ 6-7. At oral argument, upon plaintiffs' motion and in the absence of any objection by the opposing parties, the court allowed plaintiffs to withdraw their claim challenging the Department's model-matching methodology. Tr. 5, Sept. 11, 2008. The court, therefore, addresses plaintiffs' two remaining claims.

Plaintiffs' first remaining claim is that Commerce violated the antidumping statute when, in calculating a weighted-average dumping margin, Commerce regarded the sales that plaintiffs made in the United States at prices above normal value to have dumping margins of "zero." *See* Pls.' Rule 56.2 Mot. for J. upon the Agency R. 2 ("Pls.' Mot."). Specifically, in calculating a weighted-average dumping margin for plaintiffs, Commerce compared the prices at which plaintiffs made individual sales of subject merchandise in the United States (the "export price" or "EP") to the normal value of the merchandise. In doing so, Commerce assigned a margin of zero, rather than a "negative" margin, to any sales in which the export price exceeded normal value and gave full mathematical effect to those sales for which the export price was less than normal value by assigning a "positive" margin. *Issues and Decision Mem. for the Antidumping*

*Duty Admin. Reviews of Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom for the Period of Review May 1, 2004, through April 30, 2005*, Comment 1, at 11-12 (July 14, 2006) ("*Decision Mem.*"). SKF contested the application of the zeroing methodology during the administrative review, submitting briefing on the issue in response to the Department's preliminary results. *Id.*, Comment 1, at 5-9. Commerce noted SKF's objections, defended the Department's position, and ultimately decided to continue to rely on its zeroing methodology. *Id.*, Comment 1, at 5-9, 11-12; *see Final Results*, 71 Fed. Reg. at 40,065.

Plaintiffs sought the court's leave to amend their complaint to add the second remaining claim, which challenges the Department's policy of issuing liquidation instructions within fifteen days of the publication of the final results of an administrative review and the Department's actual issuance of those instructions in this administrative review. Mot. for Leave to File an Am. Summons and Am. Compl. 2; Pls.' Mot. 2; Br. in Supp. of SKF's Rule 56.2 Mot. for J. upon the Agency R. 2 ("Pls.' Br."). The court granted SKF's motion over defendant's objection that plaintiffs would lack standing to bring the claim they proposed to add to their complaint. *SKF USA Inc. v. United States*, 31 CIT __, __, Slip Op. 07-43, at 2 (Mar. 23, 2007) ("*SKF I*").

In announcing its fifteen-day policy in 2002, Commerce stated that it intended to issue liquidation instructions to Customs, pursuant to administrative reviews conducted under 19 U.S.C. § 1675(a)(1) and (a)(2), "within 15 days of publication of the final results of review in

the *Federal Register* or any amendments thereto."[1] *Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews*, Aug. 9, 2002, http://ia.ita.doc.gov/download/liquidation-announcement.html (updated Aug. 14, 2002) (last visited Apr. 15, 2009) ("*Announcement*"); *see* Pls.' Br., Attach. 11. Thereafter, in the notice setting forth the Final Results, published on July 14, 2006, Commerce announced that it "intend[ed] to issue appropriate assessment instructions directly to CBP within 15 days of publication of these final results of reviews." *Final Results*, 71 Fed. Reg. at 40,066. Commerce issued liquidation instructions to Customs on July 31, 2006 for Italy and on August 1, 2006 for France and Germany, the seventeenth and eighteenth days after publication of the Final Results. Def.'s Resp. in Opp'n to Pls.' Mot. for J. upon the Agency R. 10 ("Def.'s Resp."); Letter from Att'y, Office of the Chief Counsel for Import Admin., U.S. Dep't of Commerce, to Clerk of the Ct., U.S. Ct. of Int'l Trade (Sept. 16, 2008) (submitting the liquidation instructions issued for France, Germany, and Italy by Commerce to Customs) ("*Dep't's Liquidation Instructions*").

---

[1] In its entirety, the announcement reads as follows:

> The Department of Commerce announces that, effective immediately, it intends to issue liquidation instructions pursuant to administrative reviews conducted under section 751 of the Tariff Act of 1930, as amended, to the U.S. Customs Service within 15 days of publication of the final results of review in the *Federal Register* or any amendments thereto. This announcement applies to reviews conducted under sections 751(a)(1) and (2) of the Tariff Act.

> If you have any questions, please contact the staff member identified in the notice of final results of review published in the *Federal Register*.

*Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews*, Aug. 9, 2002, http://ia.ita.doc.gov/download/liquidation-announcement.html (updated Aug. 14, 2002) (last visited Apr. 15, 2009); *see* Br. in Supp. of SKF's Rule 56.2 Mot. for J. upon the Agency R. ("Pls.' Br."), Attach. 11.

Customs forwarded those instructions to its port directors on August 10, 2006. Pls.' Br., Attachs. 12-14 (setting forth the liquidation instructions issued by Customs to its port directors for France, Germany, and Italy in attachments 12, 13, and 14, respectively) ("*Customs' Liquidation Instructions*").

In commencing this action on August 14, 2006, plaintiffs moved concurrently for a temporary restraining order ("TRO") and for a preliminary injunction to prevent Customs from liquidating entries of subject merchandise produced by or on behalf of plaintiffs that were made during the period of review, May 1, 2004 to April 30, 2005. SKF's Mot. for a Temporary Restraining Order; SKF's Mot. for a Prelim. Inj. to Enjoin Liquidation of Entries. On the date of the filing of the summons and complaint, the court granted plaintiffs' motion for a TRO prohibiting liquidation and, two days later, granted plaintiffs' motion for a preliminary injunction, to which defendant had consented. Order, Aug. 14, 2006; Order, Aug. 16, 2006. Under the preliminary injunction order, the liquidation of entries of plaintiffs' merchandise will remain enjoined during the pendency of this litigation, including all remands and appeals. Order 1, Aug. 16, 2006.

## II. DISCUSSION

The court has jurisdiction under 28 U.S.C. § 1581(c) (2000) to adjudicate plaintiffs' claim challenging the use of zeroing in determining plaintiffs' weighted-average dumping margin. 28 U.S.C. § 1581(c). Pursuant to 28 U.S.C. § 1581(c), the court has jurisdiction to review actions commenced under 19 U.S.C. § 1516a (2000), including an action contesting the final results issued by Commerce under 19 U.S.C. § 1675(a). *See id.* The court will uphold the

Department's determination unless it is unsupported by substantial evidence on the record or otherwise not in accordance with law.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

The court has subject matter jurisdiction under 28 U.S.C. § 1581(i) to hear plaintiffs' claim challenging the Department's fifteen-day policy.  *See* 28 U.S.C. § 1581(i); *SKF I*, 31 CIT at __, Slip Op. 07-43, at 7-8 (citing *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304-05 (Fed. Cir. 2004), and *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002-03 (Fed. Cir. 2003)).[2]  The court reviews the fifteen-day policy as provided in 5 U.S.C. § 706 (2000).  28 U.S.C. § 2640(e) (2000).  Under 5 U.S.C. § 706, the court must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).[3]

### A.  Plaintiffs' Arguments Challenging Commerce's Zeroing Methodology Conflict with Controlling Precedent of the Court of Appeals for the Federal Circuit

Plaintiffs' first claim challenges the manner in which Commerce calculated the weighted-average dumping margin for SKF.  To calculate a weighted-average dumping margin in an

---

[2] The court held in *SKF USA Inc. v. United States* that jurisdiction over the claim challenging the fifteen-day policy does not fall under 28 U.S.C. § 1581(c), explaining that "[t]he language in the Federal Register notice to which plaintiffs direct the court's attention is a statement of a *present* intention on the part of Commerce to take, within fifteen days of the publication of the Final Results, the *future* action of instructing Customs to liquidate, in accordance with the Final Results, the affected entries."  *SKF USA Inc. v. United States*, 31 CIT __, __, Slip Op. 07-43, at 7 (Mar. 23, 2007) ("*SKF I*").  "In that respect, the issuance of the liquidation instructions is an agency action that is separate from the Final Results and that may not be contested under 19 U.S.C. § 1516a."  *Id.*

[3] Because the court exercises jurisdiction over plaintiffs' claim pertaining to the lawfulness of the fifteen-day policy pursuant to 28 U.S.C. § 1581(i), the court construes the portion of plaintiffs' motion addressing this claim to seek judgment on the agency record according to USCIT Rule 56.1.  *See* USCIT Rule 56.1 (concerning the granting of judgment on an agency record for an action other than that described in 28 U.S.C. § 1581(c)).

administrative review, Commerce first must determine two values for each entry of subject merchandise falling within the period of review: the normal value and the export price (or the constructed export price ("CEP") if the EP cannot be determined). 19 U.S.C. § 1675(a)(2)(A)(i). Commerce then determines a margin for each entry by taking the amount by which the normal value exceeds the EP or CEP. 19 U.S.C. §§ 1675(a)(2)(A)(ii), 1677(35)(A) (2000). If normal value does not exceed EP or CEP, Commerce, for purposes of determining a weighted-average dumping margin, assigns a value of zero, not a negative value, to the entry. Finally, Commerce aggregates these values to calculate a weighted-average dumping margin. 19 U.S.C. § 1677(35)(B).

Plaintiffs argue that the "zeroing" methodology used by Commerce is neither required by the statute nor consistent with the antidumping statute considered as a whole. *See* Am. Compl. ¶ 16. Instead, SKF insists that "the plain language of the statute demonstrates Congress' intent that Commerce use both negative and positive values." Pls.' Br. 29. Plaintiffs assert that "Commerce legally erred in calculating the weighted-average dumping margins, assessment rates and deposit rates for SKF by not giving full credit to sales made to or in the United States at prices above normal value" and thereby unlawfully distorted the weighted-average dumping margins. Am. Compl. ¶¶ 15-16; *see* Pls.' Br. 7 (stating that the weighted-average margins assigned to plaintiffs of 12.57% on ball bearings from France, 7.35% on ball bearings from Germany, and 7.65% on ball bearings from Italy, would have been -10.09%, -25.63%, and -4.00%, respectively, if calculated without zeroing). Finally, plaintiffs contend, Commerce must interpret the antidumping statute in a manner consistent with international obligations of the United States, as set forth in decisions adopted by the Dispute Settlement Body of the World

Trade Organization ("WTO"), under which the practice of zeroing has been rejected.  Am. Compl. ¶ 17; Pls.' Mot. 2; Pls.' Br. 23-25, 33-35; *see* Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade 1994, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1A, 1868 U.N.T.S. 201 (1994) ("Antidumping Agreement").  Relying, at least in part, on the doctrine originating in *Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804) ("*Charming Betsy*"), plaintiffs argue that Commerce must change its practice on zeroing to be consistent with WTO obligations, pointing out that "the U.S. Government is now complying with decisions of the Appellate Body that find Commerce's zeroing methodology to be directly contrary to the requirements and provisions set forth in the controlling international Antidumping Agreement."  Pls.' Br. 34. Plaintiffs support their argument with statements made by the United States that it intends to take action on the zeroing issue.  *Id.* at 23-24.

Defendant responds that the Court of Appeals for the Federal Circuit ("Court of Appeals") repeatedly has upheld the Department's zeroing methodology and that decisions against zeroing contained in reports from panels or the Appellate Body of the WTO are not binding on the court.  Def.'s Resp. 12, 29-35; *see Decision Mem.*, Comment 1 at 11-12. Defendant-Intervenor also argues that the decisions of the Court of Appeals govern the issue before the court and that SKF has failed to advance a plausible exception to the required application of that precedent.  Resp. of Timken US Corp. to the Rule 56.2 Mot. of SKF USA Inc., et al. 25-30.

Plaintiffs acknowledge that the Court of Appeals has upheld the Department's statutory interpretation permitting use of the zeroing methodology.  They maintain, however, that the

Court of Appeals has not addressed plaintiffs' specific statutory construction arguments. Tr. 5-6, Sept. 11, 2008; Pls.' Br. 23-25. Specifically, SKF contends that zeroing violates different statutory provisions, *i.e.*, 19 U.S.C. §§ 1673e and 1675 (2000), than those addressed in the cases decided by the Court of Appeals, *i.e.*, 19 U.S.C. §§ 1677(35) and 1677b(a) (2000). Pls.' Br. 25-26 (citing *Timken Co. v. United States*, 354 F.3d 1334, 1340-42 (Fed. Cir. 2004), and *Corus Staal BV v. Dep't of Commerce,* 395 F.3d 1343, 1346 (Fed. Cir. 2005)). Accordingly, plaintiffs argue, the court should not consider itself bound by the conclusion reached by the Court of Appeals in its analysis under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), that the statute is ambiguous and that the Department's interpretation was reasonable. *Id.* at 28-29 (citing *Timken*, 354 F.3d at 1341, and *Corus Staal BV v. Dep't of Commerce,* 27 CIT 388, 396-97, 259 F. Supp. 2d 1253, 1261 (2003), *aff'd Corus Staal*, 395 F.3d 1343). Plaintiffs submit that the court may, and should, depart from the Court of Appeals' holdings on the lawfulness of zeroing. *Id.* at 27 (citing 18 James Wm. Moore et al., Moore's Federal Practice ¶ 134.06[1]-[2] (3d ed. 2005)).

Plaintiffs fail to persuade the court that the issue posed by their statutory interpretation so differs from precedent established by the Court of Appeals that the court is free to disregard that precedent. *See Timken*, 354 F.3d 1334; *Corus Staal*, 395 F.3d 1343. In *Timken*, the Court of Appeals affirmed the Court of International Trade's holding that Commerce reasonably interpreted the definitions in 19 U.S.C. § 1677(35)(A) to allow Commerce to assign a value of zero to negative dumping sales transactions in the context of an administrative review conducted under 19 U.S.C. § 1675(a). *Timken*, 354 F.3d at 1341-43. The Court of Appeals also concluded that the "fair comparison" language in § 1677b(a), which instructs Commerce how to calculate

normal value, did not go beyond the calculation of normal value and therefore did not impose

any additional limitations on the calculation of dumping margins. *Id.* at 1343. In *Corus Staal*,

the Court of Appeals held that the Department's assigning a value of zero to negative dumping

margins in an investigation (as opposed to an administrative review, as addressed in *Timken*) was

reasonable given the language in 19 U.S.C. § 1677(35). *Corus Staal,* 395 F.3d at 1347. The

Court of Appeals was unpersuaded by the plaintiffs-appellants' reliance on the reference to a

"weighted-average" in 19 U.S.C. § 1677f–1(d)(1)(A)(i) (2000) as a means to distinguish an

investigation from an administrative review for the purpose of analyzing the zeroing issue. *Id.*

Plaintiffs invoke 19 U.S.C. §§ 1675 and 1673e as the foundation of their claim that the

statute prohibits zeroing. Pls.' Br. 25-26. The relevant text of 19 U.S.C. § 1675 provides:

> (a) Periodic review of amount of duty
> ***
> (2) Determination of antidumping duties
> (A) In general
> For the purpose of paragraph (1)(B) [which provides for review and
> determination of the amount of any antidumping duty], the
> administering authority shall determine–
> (i) the normal value and export price (or constructed export price) of
> each entry of the subject merchandise, and
> (ii) the dumping margin for each such entry.
> ***
> (C) Results of determinations
> The determination under this paragraph shall be the basis for the
> assessment of countervailing or antidumping duties on entries of
> merchandise covered by the determination and for deposits of estimated
> duties.

19 U.S.C. § 1675(a)(2). Plaintiffs argue that subparagraph (C) indicates that "the cumulated

normal values and EP/CEP . . . are to be *the basis* of the assessment and deposit rates." Pls.'

Br. 31 (emphasis added). Plaintiffs maintain that subparagraph (C), in stating that the

determination made under paragraph (2) "*shall be the basis* for the assessment of . . . duties . . . and for deposits of estimated duties," 19 U.S.C. § 1675(a)(2)(C), calls for a single determination and in so doing requires the determinations made under (A)(i) and (A)(ii) to be consistent. Pls.' Br. 32. According to plaintiffs, the determinations under (A)(i) of normal value and EP or CEP and under (A)(ii) of entry-by-entry dumping margins will be consistent only if Commerce aggregates all results without assigning a value of zero to the negative dumping transactions. *Id.* Plaintiffs invoke 19 U.S.C. § 1673e(c)(3) to support their argument under § 1675(a)(2). *Id.* Plaintiffs argue that § 1673e(c)(3), in requiring Commerce to determine normal value and EP (or CEP) and to use those determinations as "*the basis* for the assessment of antidumping duties," 19 U.S.C. § 1673e(c)(3) (emphasis added), means that Commerce must aggregate the entry-by-entry margins in a certain way, *i.e.*, without equating negative results to zero.[4] Pls.' Br. 32-33.

The statutory language in 19 U.S.C. §§ 1675(a) and 1673e(c)(3) imparts a degree of discretion to Commerce that refutes plaintiffs' argument. When read together, these statutory provisions do not address directly the calculation of the weighted-average dumping margin. *Cf.* 19 U.S.C. § 1677(35)(B) (providing that "[t]he term 'weighted average dumping margin' is the percentage determined by dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such

---

[4] Section 1673e(c)(3) states that
[t]he administering authority shall publish notice in the Federal Register of the results of its *determination of normal value and export price* (or the constructed export price), and *that determination shall be the basis* for the assessment of antidumping duties on entries of merchandise to which the notice under this subsection applies and also shall be the basis for the deposit of estimated antidumping duties on future entries . . . .
19 U.S.C. § 1673e(c)(3) (emphasis added).

exporter or producer."). Although the provisions in § 1675(a) on which plaintiffs rely for their argument do not *preclude* calculation of a weighted-average dumping margin by the specific method of aggregating entry-by-entry margins that plaintiffs advocate, neither do they *require* use of such a method. Plaintiffs' citation to § 1673e(c)(3) does not remedy the shortcoming in their argument. The language of this provision also imparts a degree of discretion to Commerce, referring broadly to the publishing of notice of "the *results* of its determination of normal value and export price (or the constructed export price)" and providing that "that determination *shall be the basis* for the assessment of antidumping duties on entries of merchandise . . . ." 19 U.S.C. § 1673e(c)(3) (emphasis added).

It is axiomatic that, as plaintiffs' argument suggests, the statute should be construed as a whole and in accordance with its overall purpose. However, plaintiffs' argument derived from 19 U.S.C. §§ 1675(a) and 1673e(c)(3) does not justify the court's disregarding the conclusion of the Court of Appeals that the statute is ambiguous on the question of zeroing. Plaintiffs' shifting of the focus from some statutory provisions to others does not convince the court that the court is free to depart from the analysis that the Court of Appeals applied under *Chevron*, 467 U.S. at 842-43. As the Court of Appeals held in *Timken* and *Corus Staal,* Commerce reasonably interpreted 19 U.S.C. § 1677(35) to allow for the zeroing of negative, individual, entry-specific margins when taking the weighted average of all individual dumping margins. Plaintiffs' argument reads into subparagraphs (A)(i), (A)(ii), and (C) of 19 U.S.C. § 1675(a)(2) and 19 U.S.C. § 1673e(c)(3) a limitation that is not required by the language of the statute.

Finally, plaintiffs' arguments regarding the issue of consistency with the WTO obligations of the United States are unavailing. *See* Pls.' Br. at 23-25, 33-35. Essentially,

plaintiffs are raising arguments that the Court of Appeals, in cases in which this issue was raised, previously has rejected. The plaintiffs in *NSK Ltd. v. United States*, 510 F.3d 1375 (Fed. Cir. 2007), challenged Commerce's use of its zeroing methodology in an administrative review of the antidumping duty order on antifriction bearings. These plaintiffs sought a remand to Commerce to allow the agency to implement a decision issued by the WTO Appellate Body on January 9, 2007, and adopted by the WTO Dispute Resolution Body on January 23, 2007, concluding that Commerce's zeroing practice (as applied in the very review at issue in the case) is inconsistent with the international obligations of the United States. *Id.* at 1379-80. Just as plaintiffs do here, the plaintiffs in *NSK Ltd.* pointed to the February 20, 2007 statement by the United States that "it intends to comply in this dispute with its WTO obligations and will be considering carefully how to do so."[5] *Id.* (citing Press Release, U.S. Mission to the United Nations in Geneva, U.S. Statements at the WTO Dispute Settlement Body Meeting (Feb. 20, 2007)); Pls.' Br. 23. Citing its previous decision in *Corus Staal*, the Court of Appeals reiterated that it refuses "to overturn Commerce's zeroing practice based on any ruling by the WTO or other international body unless and until such ruling has been adopted pursuant to the specified statutory scheme."[6] *NSK Ltd.*,

---

[5] In this case, plaintiffs also point to the Department's notice announcing an interim rule to implement those decisions. Pls.' Br. 24; *see Implementation of the Findings of the WTO Panel in US Zeroing (EC): Notice of Initiation of Proceedings Under Section 129 of the URAA; Opportunity to Request Admin. Protective Orders; and Proposed Timetable and Procedures*, 72 Fed. Reg. 9306 (Mar. 1, 2007) ("*Implementation Notice*"). The notice indicated that Commerce would implement the Appellate Body decision with respect to twelve antidumping investigations. *Implementation Notice*, 72 Fed. Reg. at 9306. Commerce, however, did not indicate that it was changing its practice for conducting administrative reviews.

[6] The Uruguay Round Agreements Act ("URAA"), in Sections 123 and 129, established two procedures for implementing adverse WTO reports in U.S. law. *See* 19 U.S.C. §§ 3533, 3538 (2000); *Corus Staal BV v. Dep't of Commerce,* 395 F.3d 1343, 1349 (Fed. Cir. 2005). To

(continued...)

510 F.3d at 1380 (internal quotation marks and citations omitted).  The Court of Appeals further

stated in *NSK Ltd.* that

> [D]espite Commerce's public statement that it intended to comply with its WTO
> obligations, the WTO decision rejecting zeroing has not yet been implemented by
> Commerce.  Moreover, the manner in which the WTO decision will be
> implemented by Commerce is far from clear, as illustrated by the parties'
> disagreement over whether Commerce will (or should) apply the WTO decision to
> administrative reviews . . . . Situations such as this are just one example of the
> reasons this court refrains from commenting on international body decisions
> unless and until they have been adopted pursuant to the specified statutory
> scheme.  Unless and until that happens, this court has nothing to review.

*Id.*  In a very recent decision (issued on December 16, 2008), the Court of Appeals applied its

precedent in *NSK Ltd.* to reach the same result.  *Koyo Seiko Co., Ltd. v United States*, 551 F.3d

1286, 1291 (Fed. Cir. 2008).

Plaintiffs cite to nothing establishing that the United States has implemented into its own

law the WTO decisions of January 9 and January 23, 2007, on which plaintiffs rely for their

argument.  The court, therefore, finds no basis on which to ignore or depart from the holdings in

*NSK Ltd.* and *Koyo Seiko Co., Ltd.*

In summary, the court will affirm the use in the Final Results of the Department's

methodology for calculating the weighted-average dumping margin by assigning individual

dumping margins of zero to sales made in the United States at prices higher than normal value.

The court concludes that it may not disregard the binding precedent of the Court of Appeals

---

[6](...continued)
implement a change of agency regulation or practice due to an adverse WTO ruling, § 3533(g)(1)
provides a lengthy process of consultation between the United States Trade Representative,
Congress, the agency, private sector advisory committees, and the public, a process that may
culminate in a final rule.  19 U.S.C. § 3533(g)(1).  Section 129 of the URAA provides for a more
limited procedure for the implementation of an adverse WTO panel or Appellate Body report that
addresses, *inter alia*, a particular antidumping determination by Commerce.  *See id.* § 3538.

holding that this methodology is consistent with the antidumping statute.  Nor may the court

disregard the precedents of the Court of Appeals that bear on the issue of consistency of

Commerce's zeroing practice with the WTO obligations of the United States.

### B.  The Fifteen-Day Policy Is Unlawful

As discussed in *SKF I*, any relief that the court might grant on the new claim in plaintiffs'

amended complaint could be of no benefit in the context of the implementation of the Final

Results, due to the preliminary injunction that plaintiffs obtained.  *SKF I*, 31 CIT at __, Slip Op.

07-43, at 11.  *SKF I* concluded that plaintiffs' new claim appears to seek declaratory relief.  *Id.*

Specifically, plaintiffs claim that "the decision to issue and the issuance of final liquidation

instructions prior to the period statutorily permitted for filing an action with this Court are not in

accordance with law."  Am. Compl ¶ 7.  As clarified elsewhere in the amended complaint,

plaintiffs' reference to the "period statutorily permitted for filing an action" is intended to mean

the sixty-day period established by 19 U.S.C. § 1516a(a)(2).  Am. Compl. ¶ 23.  According to the

amended complaint, the agency's announcement in the Final Results that it intended to comply

with the fifteen-day policy, Am. Compl. ¶¶ 7, 20 (citing Commerce's decision to issue

instructions within fifteen days of publication of the Final Results and also citing the August 9,

2002 *Announcement*), and the actual issuance of those instructions "[o]n or about fifteen (15)

days after the publication of the *Final Results*," Am. Compl. ¶ 21, "are contrary to 19 U.S.C.

§ 1516a[(a)](2) which gives a party the statutory right to wait thirty (30) days after the

publication of the *Final Results* before filing its summons and an additional thirty (30) days

before filing its complaint."  Am. Compl. ¶ 23.  The amended complaint also alleges that the

actions at issue violated the USCIT Rules, "which give a party the right to wait 30 days after

filing its complaint before seeking a preliminary injunction." *Id.*; *see* USCIT Rule 56.2(a)

(stating that "[a]ny motion for a preliminary injunction to enjoin the liquidation of entries that are

the subject of the action must be filed by a party to the action within 30 days after the date of

service of the complaint, or at such later time, for good cause shown").

In their motion for judgment upon the agency record, plaintiffs attack the fifteen-day

policy generally, stating that "Commerce's[] policy of issuing liquidation instructions within

15 days of the publication of the notice of final results of an administrative review . . . [is] not in

accordance with law." Pls.' Mot. 2. Plaintiffs request that the court enter an order "ordering that

the agency's 15-day liquidation instruction policy is unlawful and void." *Id.* In the proposed

order attached to their motion for judgment upon the agency record, plaintiffs again request that

the court order "that the agency's policy of issuing liquidation instructions within 15 days of

publication of the final results of an administrative review is unlawful and therefore void." *Id.* at

Order 2.

The court construes plaintiffs' amended complaint to seek a declaratory judgment that the

fifteen-day policy is unlawful on the ground that 19 U.S.C. § 1516a(a)(2) requires Commerce to

wait sixty days or more before issuing liquidation instructions to Customs. In reviewing the

Department's fifteen-day policy, the court will defer to the Department's interpretation of the

statute to the extent the Department's reasoning has power to persuade.[7] *See Christensen v.*

---

[7] The more heightened deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984), is not appropriate here even though Commerce stated in Final Results that it intended to follow its fifteen-day policy. *See Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom: Final Results of Antidumping Duty Admin. Reviews*, 71 Fed. Reg. 40,064, 40,066 (July 14, 2006). The Department's statement of future intent is not part of its actual determination on the

(continued...)

*Harris County*, 529 U.S. 576, 587 (2000); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944);

*Mittal Steel Galati S.A. v. United States*, 31 CIT __, __, 502 F. Supp. 2d 1295, 1315 (2007)

("*Mittal Steel Galati II*").

The court rejects plaintiffs' argument that 19 U.S.C. § 1516a(a)(2) requires Commerce to

wait sixty days (or alternatively, according to USCIT Rule 56.2(a), ninety days) from the date of

publication before issuing liquidation instructions. The statute, in § 1516a(a)(2), requires a party

contesting the final results of an administrative review to file a summons within thirty days of the

publication of the final results and file a complaint within thirty days after the filing of the

summons.[8] 19 U.S.C. § 1516a(a)(2). Congress made compliance with these two filing

provisions essential to a plaintiff's invoking the jurisdiction of the Court of International Trade to

review the final results. Congress, in § 1516a(a)(2), made no mention of injunctive relief, a

subject that is addressed instead in § 1516a(c)(2), which provides, in pertinent part, that

_____

[7](...continued)
administrative review and merely sets forth the Department's intent to follow an existing policy in implementing the results of the administrative review through future liquidation instructions. *See SKF I*, 31 CIT at __, Slip Op. 07-43, at 6-7. The statement of future intent does not articulate an interpretation of the statute. Moreover, the fifteen-day policy was not implemented through a notice-and-comment procedure. For these reasons, neither the fifteen-day policy nor the Department's statement in the Final Results of its intention to follow that policy qualifies for *Chevron* deference, as do statutory interpretations contemplated during, and articulated by, Commerce in the course of antidumping duty proceedings. *See Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001).

[8] Subsection (a)(2)(A) of 19 U.S.C. § 1516a provides that "an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint." 19 U.S.C. § 1516a(a)(2)(A).

> the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of . . . the administering authority . . . upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

19 U.S.C. § 1516a(c)(2). Thus, in establishing, in subsection (a)(2) of § 1516a, the thirty-day summonsing period and the thirty-day period for filing the complaint, Congress gave no indication of an intent to affect the time period under which a party may seek an injunction under subsection (c)(2). *See id.*

Nor is an injunction always essential to the exercise of the court's jurisdiction under 19 U.S.C. § 1516a(a). Although a plaintiff whose entries have liquidated no longer may obtain relief in the form of a revised assessment rate on their entries, *see SKF USA, Inc. v. United States*, 512 F.3d 1326, 1331 (Fed. Cir. 2008), and *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983), it is possible, depending on the nature of the claim, that a plaintiff in that situation still may obtain some form of relief. *See Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1341 (Fed. Cir. 2008) (distinguishing *Zenith*, 710 F.2d at 810, and stating that "*Zenith* did not establish a blanket rule that there can never be a post-liquidation review of an administrative review determination, even when that determination affects matters other than the specific liquidated goods."); *Hylsa, S.A. de C.V. v. United States*, 31 CIT __, __, Slip Op. 07-6, at 6-9 (Jan. 17, 2007). Thus, liquidation of entries of subject merchandise that occurred prior to a plaintiff's obtaining an injunction under § 1516a(c)(2) might, or might not, defeat a plaintiff's right to obtain judicial review of the final results.

Plaintiffs' argument based on the Court's rules is also unconvincing. USCIT Rule 56.2(a) sets forth, as a general rule subject to an exception for good cause shown, a

maximum time of thirty days after service of the complaint in which a party must move for the injunction. The court does not construe the rule to address the question of what is the minimum time a party is granted to do so or the question of how long Commerce must wait before issuing liquidation instructions.

Because the antidumping statute does not require Commerce to wait at least sixty days before issuing liquidation instructions, the court concludes that plaintiffs are not entitled to the specific declaratory judgment that they seek in their amended complaint and their motion for judgment upon the agency record. Nevertheless, in so concluding, the court does not hold that the Department's fifteen-day policy, as in effect at the time of issuance of the Final Results, is in accordance with law. The court, in its discretion, will consider a facial challenge to the fifteen-day policy on the ground that the policy does not permit a party a reasonable time to seek an injunction as intended by 19 U.S.C. § 1516a(c)(2). *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) ("[A] court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990))).

Before addressing the substance of the claim, the court has an independent obligation to ensure that standing requirements would not preclude consideration of the claim.[9] *Summers v.*

---

[9] In *SKF I*, the court allowed plaintiffs to amend their complaint to add a claim challenging the Department's fifteen-day policy. *SKF I*, 31 CIT at __, Slip Op. 07-43, at 13. In doing so, the court rejected defendant's argument that the claim was moot because plaintiffs obtained injunctive relief to prevent the liquidation of their entries of merchandise and therefore suffered no concrete injury in fact. *Id.* at 10-11. The court concluded that the proposed new claim is not moot despite the fact that plaintiffs obtained an injunction against liquidation. *Id.* The court reasoned that the action complained of is "capable of repetition, yet evading review" and too short in duration to be fully litigated prior to expiration or cessation and that there is a

(continued...)

*Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009). "Because standing is 'an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Based on plaintiffs' complaint, the pleadings submitted in these proceedings, and the administrative record, the court concludes that the Article III and prudential standing requirements would not have barred a claim grounded in 19 U.S.C. § 1516a(c)(2).

An Article III standing inquiry consists of three elements: injury in fact or threat thereof, a causal connection between the injury and the agency action at issue, and redressability. *Lujan*, 504 U.S. at 560-61; *see SKF I*, 31 CIT at __, Slip Op. 07-43, at 9-12. With respect to the first element, plaintiffs have established that their injuries consist of the actual costs and inconvenience incurred in filing additional motions and early pleadings to prevent premature liquidation of their entries and of the threat of premature liquidation of plaintiffs' entries in future judicial reviews. *See* Am. Compl. ¶ 22; SKF's Reply to Def.'s Opp'n to SKF's Mot. for Leave to File an Am. Summons and Am. Compl. 6-7 & 7, n.7; *Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1370 (Fed. Cir. 2007) ("'A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.'" (quoting *Babbitt v. United*

---

[9](...continued)
reasonable likelihood that plaintiffs again will suffer the injury that gave rise to the suit, which injury included their incurring the costs and inconveniences of engaging in processes to bring their suit and seek injunctive relief in a very short time period. *Id.* (quoting *Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995)).

*Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).  Plaintiffs also have satisfied the causation requirement.  The fifteen-day policy that plaintiffs identify is a policy that Commerce adopted and applied in successive administrative reviews.  It is the policy itself and the agency's intent, stated in the final results of successive administrative reviews, to follow that policy that caused plaintiffs uncertainty as to how soon their entries would liquidate, that caused plaintiffs to make expedited filings, and that potentially could cause the liquidation of plaintiffs' entries subject to future reviews.  Regardless of whether the fifteen-day policy is claimed to be unlawful under subsection (a) or (c) of § 1516a, the causation analysis is the same.  Finally, a favorable result would redress plaintiffs' injury.  If the fifteen-day policy were held to be unlawful, liquidation instructions no longer could be issued lawfully pursuant to the policy in future reviews.

In addition to the Article III standing requirement, the prudential standing requirement applicable to cases brought under the APA is also met.  To establish prudential standing, a plaintiff's interest in the litigation must fall within the zone of interests protected by the statute. *Ass'n of Data Processing Service Organizations, Inc. v Camp*, 397 U.S. 150, 153 (1970) (citing 5 U.S.C. § 702); *Salmon Spawning & Recovery Alliance v. United States Customs and Border Prot.*, 550 F.3d 1121, 1130 n.7 (Fed. Cir. 2008).  In this case, plaintiffs' interest lies in the statutory right to obtain meaningful judicial review, a right that arises out of 19 U.S.C. § 1516a. This right to meaningful judicial review arises out of both subsection (a), which in paragraph (2) allows a plaintiff to invoke the jurisdiction of the Court of International Trade, and subsection (c), which in paragraph (2) provides for an injunction against liquidation, absent which meaningful judicial review could be unavailable.

The statutory right provided by § 1516a(c)(2) is directly affected by the fifteen-day

policy.  Subsection (c), paragraph (2) plainly grants a plaintiff a statutory right to seek an

injunction against liquidation of entries covered by a determination of Commerce, including a

determination of the final results of an administrative review.  That statutory right implies,

necessarily, some reasonable opportunity in which a plaintiff may seek to obtain the specific type

of injunction described in § 1516a(c)(2).

Commerce implements its fifteen-day policy together with an agency practice of issuing

liquidation instructions that are effective immediately; *i.e.*, they do not instruct Customs to wait

any period of time before commencing liquidation of the affected entries.[10]  *See, e.g.*, *Boilerplate

Email Instructions to U.S. Customs and Border Prot.*, items 1, 27a-28,

http://ia.ita.doc.gov/download/custboil.htm (updated Aug. 18, 2008) (last visited Apr. 15, 2009)

(setting forth "General Information about AD/CVD Operations E-mails," "Liquidation

Instructions – Antidumping," and "Automatic Liquidation Instructions for Antidumping Cases").

Consistent with its fifteen-day policy as implemented with its practice of issuing liquidation

instructions that do not instruct Customs to delay liquidation, Commerce could issue liquidation

instructions the first day after publication of the final results of a review, and Customs could

liquidate the entries immediately.  In that event, an interested party essentially would have no

reasonable opportunity to obtain an injunction against liquidation or even a TRO.  To ensure that

it will have the chance to obtain an injunction, such a plaintiff would need to file a summons,

---

[10] The liquidation instructions issued in this case do not differ materially from the language in the boilerplate.  *Compare Boilerplate Email Instructions to U.S. Customs and Border Prot.*, item 27b1, http://ia.ita.doc.gov/download/custboil.htm (updated Aug. 18, 2008) (last visited Apr. 15, 2009), *with Dep't's Liquidation Instructions* and *Customs' Liquidation Instructions*.

complaint, and a motion or application for a TRO (if a consented-to injunction is not obtainable), and actually obtain a TRO, all on the day following publication of the final results.[11]  The fifteen-day policy, as practiced by Commerce, induces an absurd, and unnecessary, "race to the courthouse" that burdens impermissibly the right of a prospective plaintiff to seek the injunction that Congress contemplated in enacting § 1516a(c)(2) and frustrates the purpose of that provision.  For this reason, any deference that could be granted under *Skidmore*, 323 U.S. at 140, would not cause the court to conclude that the fifteen-day policy is consistent with 19 U.S.C. § 1516a(c)(2).  Moreover, Commerce offered in the *Announcement* no reasoning in support of the fifteen-day policy and set forth no reasoning in the Final Results in support of its decision to apply it.  And even were the fifteen-day policy to fall within the class of agency decisions that is accorded deference under *Chevron*, the court still could not conclude that a policy that conflicts with congressional intent is based on a reasonable construction of § 1516a(c)(2).

Nevertheless, defendant argues that both the fifteen-day policy and the issuance of instructions in this case were lawful under the antidumping statute.[12]  Def.'s Resp. 26-29.  Citing *International Trading Co. v. United States*, 412 F.3d 1303, 1313 (Fed. Cir. 2005) ("*International Trading II*"), defendant maintains that "Commerce's liquidation policy fully comports with the Federal Circuit's settled precedent that the liquidation process begins following the publication of final results, not following the filing of a summons and complaint."  Def.'s Resp. 27.

---

[11] Even such extraordinary diligence theoretically might not suffice.  However unlikely it may be in practice, a theoretical possibility exists that liquidation of entries could occur on the day following Federal Register publication of the Final Results, before any injunction or TRO is served on the responsible government officials.

[12] Defendant-Intervenor takes no position on the issues plaintiffs raise concerning the fifteen-day policy.  Resp. of Timken US Corp. to the Rule 56.2 Mot. of SKF USA Inc., et al. 3.

Defendant also cites *International Trading Co. v. United States*, 281 F.3d 1268, 1273 (Fed. Cir. 2002) ("*International Trading I*") for the proposition that the Court of Appeals "rejected the argument that suspension of liquidation must continue beyond the date that the final results are published to safeguard a party's right to judicial review." *Id.* at 28. Defendant's reliance on the *International Trading* decisions is correct to the extent that these decisions establish that the publication of the final results of an administrative review lifts the suspension of liquidation and begins the six-month period culminating in deemed liquidation pursuant to 19 U.S.C. § 1504(d) (2000). *See Int'l Trading II*, 412 F.3d at 1308 (citing *Int'l Trading I*, 281 F.3d at 1275).[13] The lifting of the suspension of liquidation upon publication of the final results, however, does not require the court to conclude that a policy allowing for the immediate liquidation of entries is permissible. Neither *International Trading I* nor *International Trading II* held that 19 U.S.C. § 1516a(c)(2), which provides plaintiffs an opportunity to seek injunctive relief, permits an agency policy under which prospective plaintiffs are forced to contend with the possibility that liquidation under that policy could occur as early as the first day following publication of the final results of an administrative review.

In further support of its argument that the Commerce fifteen-day policy is lawful, defendant points to two decisions of the Court of International Trade – *Mukand International Ltd. v. United States*, 30 CIT 1309, 1313-14, 452 F. Supp. 2d 1329, 1334 (2006) ("*Mukand*") and

---

[13] Congress enacted 19 U.S.C. § 1504(d) "to restrict the length of time Customs could take to liquidate an entry." *Int'l Trading Co. v. United States*, 412 F.3d 1303, 1309-10 (Fed. Cir. 2005). In doing so, "Congress sought to 'increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction.'" *Id.* at 1310 (quoting *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002)). However, nothing in 19 U.S.C. § 1504(d) requires or justifies a policy that effectively could foreclose a plaintiff's right to seek an injunction pending judicial review.

*Mittal Steel Galati S.A. v. United States*, 31 CIT __, __, 491 F. Supp. 2d 1273, 1281 (2007)

("*Mittal Steel Galati I*") – each of which, defendant states, relied on *International Trading I*.

Def.'s Resp. 26-29.  In *Mukand*, Commerce's liquidation instructions were issued thirty-five days

after publication of the final results of an administrative review and the entries did not liquidate

until the seventy-fifth day.  *Mukand*, 30 CIT at 1310, 491 F. Supp. 2d at 1331.  Arguing that

Commerce was required by statute to wait the full sixty-day period described in 19 U.S.C.

§ 1516a(a)(2)(A) before issuing such instructions, the plaintiff claimed the instructions were

unlawful and sought an order voiding the resulting liquidations.  *Id.* at 1309, 1312-13, 491 F.

Supp. 2d at 1330, 1333.  Reasoning that liquidation of entries is not impliedly stayed during the

time periods in 19 U.S.C. § 1516a, *Mukand* held, on the record facts before it, that "Commerce's

issuance of liquidation instructions within the combined 60-day period under 19 U.S.C.

§ 1516a(a)(2)(A) for commencement of an action in the United States Court of International

Trade was not unlawful, as claimed by plaintiffs, and the resulting liquidations are valid."  *Id.*

at 1315, 491 F. Supp. 2d at 1335.  *Mukand* does not state a broad holding that the fifteen-day

policy, which provides for the issuance of liquidation instructions that can result in immediate

liquidation, is invariably permissible under 19 U.S.C. § 1516a(c)(2).

          In *Mittal Steel Galati I*, the Court of International Trade noted the "difficult situation"

that the fifteen-day policy created for plaintiffs contemplating suit because of the uncertainty

when liquidation will occur, the rule that liquidation moots a challenge to the assessment rates

for affected entries, and the need to seek injunctive relief almost immediately following

publication of the final results of an administrative review.  *Mittal Steel Galati I*, 31 CIT at ___,

491 F. Supp. 2d at 1282.  The court in *Mittal Steel Galati I*, however, citing 19 U.S.C.

§ 1675(a)(3)(B), reasoned that "the antidumping statute expressly authorizes Commerce to issue liquidation instructions following an administrative review, but does not prescribe a schedule or methodology for doing so." *Id.* at ___, 491 F. Supp. 2d at 1281. Considering the fifteen-day policy a measure to fill a gap in § 1675(a)(3)(B) left by Congress in enacting the antidumping statute, *Mittal Steel Galati I* declined to declare the policy "unreasonable."[14] *Id. Mittal Steel Galati I*, nevertheless, observed that "there exists the possibility Commerce and Customs may 'act so quickly,' [*International Trading I*], 281 F.3d at 1273, as to practically foreclose interested parties from obtaining judicial review of subject entries pursuant to 19 U.S.C. § 1516a, and such a foreclosure would render Commerce's policy unreasonable." *Id. Mittal Steel Galati I* did not address explicitly the question of whether the fifteen-day policy, by allowing liquidation to occur almost immediately upon publication of final results, comports with 19 U.S.C. § 1516a(c)(2).

The court is unable to conclude that the fifteen-day policy is consistent with 19 U.S.C. § 1516a(c)(2) because that policy allows liquidation to occur almost immediately upon publication rather than providing a minimally reasonable time during which a party may seek to obtain an injunction against liquidation. For the reasons previously discussed, plaintiffs qualify for declaratory relief with respect to the possible application of the fifteen-day policy to

---

[14] In a case decided later that year, the Court of International Trade, stating that it agreed with the statutory analysis in *Mittal Steel Galati I* and *Mukand*, declined to order reliquidations of those of the plaintiff's entries of subject merchandise that were liquidated forty-five days after publication of the final results, prior to the plaintiff's application for injunctive relief. *Mittal Steel Galati S.A. v. United States*, 31 CIT __, __, 502 F. Supp. 2d 1295, 1314-16 (2007) ("*Mittal Steel Galati II*"). In *Mittal Steel Galati II*, the court concluded that deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), was appropriate and held that "Commerce's 15 Day Policy advances a reasonable and–albeit not compellingly–persuasive interpretation of 19 U.S.C. § 1675(a)(3)(B)-(C)." *Mittal Steel Galati II*, 31 CIT at __, 502 F. Supp. 2d at 1317. The opinion did not discuss specifically the issue of whether the fifteen-day policy complies with 19 U.S.C. § 1516a(c)(2).

implement future administrative reviews.  The court, therefore, will award plaintiffs a declaratory judgment that the Department's application of the fifteen-day policy to implement the Final Results, and any future application of the fifteen-day policy to implement the final results of an administrative review conducted under 19 U.S.C. § 1675(a)(1)-(2), are contrary to law.

### III. CONCLUSION

The court will affirm the Final Results because plaintiffs have failed to demonstrate that Commerce acted contrary to law in assigning a value of zero to negative dumping margins on individual sales that plaintiffs made above normal value.  On their second remaining claim, plaintiffs are entitled to a declaratory judgment that the Department's application of the fifteen-day policy to implement the Final Results, and any future application of that policy to implement final results of an administrative review conducted under 19 U.S.C. § 1675(a)(1)-(2), are unlawful because the fifteen-day policy does not provide parties a reasonable time in which to seek an injunction pursuant to 19 U.S.C. § 1516a(c)(2).  Judgment will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: April 17, 2009
New York, New York